OPINION
{¶ 1} Appellant, Edward Ward, Jr., appeals the April 22, 2004 judgment and sentence of the Logan County Court of Common Pleas following a conviction of possession of drugs in violation of R.C. 2925.11.
 {¶ 2} On October 29, 2003, Detectives Jon Stout and Larry Garwood and Deputy John Godwin responded to a confidential informant's tip that a black male was selling crack cocaine at the Belle Meadow Apartments in Logan County, Ohio. The officers arrived at the apartment in the mid-afternoon, and when the officers knocked on the door, the owner, Brian Mees, opened it and invited them inside.
 {¶ 3} Upon entering, Detective Stout asked Mees if anyone else was in the apartment, and Mees informed the detective that there were two other people upstairs. Initially, Detective Stout shouted for the other occupants to come downstairs, but there was no response; therefore, Detective Garwood and Deputy Godwin went upstairs to secure the apartment. Upstairs, the officers found a black male, later identified as Ed Ward, attempting to hide under the bed and a female, later identified as Patricia Roberts, attempting to hide in the closet. The officers apprehended both of them, and when the police searched Ward's person, they found $225 in cash.
 {¶ 4} After taking Ward and Roberts downstairs, Detective Stout asked Ed Ward to identify himself. Ward originally gave the detective a false name and a ten-digit social security number. Knowing that the social security number was false, Detective Stout told Ward that he (Stout) thought Ward's street name was "Big." Ward eventually identified himself correctly and admitted that he was "Big," the guy the police were looking for.
 {¶ 5} At this point the testimony between the officers and Mees and Roberts conflict. During the trial, the officers testified that Ward was only wearing pants and no shirt when he was arrested. Furthermore, the officers testified that they distinctly remembered this because it was a cold outside, and Ward requested that he only needed a T-shirt to wear instead of a jacket before being transported to the jail. On the other hand, Mees and Roberts testified that they thought Ward was already wearing a shirt when he was arrested; however, on cross-examination, both Mees and Roberts admitted that their recollection may be incorrect. Ward was subsequently arrested and transported to jail because he had outstanding felony arrest warrants issued for him.
 {¶ 6} Detective Stout remained with Mees and Roberts at Mees' apartment and asked Mees if he could search his home for contraband. Mees gave verbal consent, which was later acknowledged on a written consent form, for the detective to search his apartment. The search discovered some marijuana on the coffee table; crack pipes under the sofa downstairs and in the bedroom upstairs; and crack cocaine weighing 26.51 grams, hypodermic needles and insulin in a black sweatshirt hanging on a stereo speaker downstairs. Additional crack cocaine weighing 21.82 grams was turned over by Roberts because she was hiding it on her person. No drugs were found on Ward's person.
 {¶ 7} Once Ward arrived at the jail, he was booked and asked questions. As he was being transported within the jail, he notified a guard that he was diabetic and that he needed his insulin. The guard informed Deputy Garwood of Ward's request, so Garwood took the insulin and needles from the black sweatshirt found at Mees' apartment to Ward.
 {¶ 8} Mees, Ward, and Roberts were all arrested, and Mees and Roberts entered into plea agreements. Conversely, Ward elected to proceed to trial. At trial, Mees testified that the black sweatshirt containing the cocaine found in his apartment belonged to Ward and further stated that Ward gave him crack cocaine on the day of the arrest. Similarly, Roberts testified that she purchased crack cocaine from Ward at Mees' apartment before the police arrived, and overheard another drug transaction take place in the downstairs area while she was upstairs in the bedroom. Finally, Roberts stated that when the police arrived, she and Ward ran upstairs to hide, and Ward gave her the 21.82 grams of crack cocaine that she later admitted to having on her person. It should be noted that Roberts and Mees were not required to testify against Ward as part of their plea agreement.
 {¶ 9} On April 22, 2004, a jury found Ward guilty of possessing at least 25 grams of crack cocaine in violation of R.C. 2925.11(C)(4)(e), a felony in the first degree that carries a mandatory sentence. Ward was also subject to forfeiture of the $225 cash found on his person when he was arrested pursuant to R.C. 2925.42. At Ward's sentencing hearing, the trial court imposed a six year prison term. Moreover, at the sentencing hearing the trial court did not order Ward to pay any court costs; however, in the trial court's sentencing entry filed eight days later, the court ordered Ward to pay all the costs of prosecution.
 {¶ 10} Ward appeals alleging two assignments of error.
 First Assignment of Error Mr. Ward's conviction is against the manifest weight of theevidence.
 {¶ 11} In State v. Thompkins, the Ohio Supreme Court stated:
When a court of appeals reverses a judgment of a trial courton the basis that the verdict is against the weight of theevidence, the appellate court sits as a thirteenth juror anddisagrees with the factfinder's resolution of the conflictingtestimony. The Court reviewing the entire record, weighs theevidence and all reasonable inferences, considers the credibilityof the witnesses and determines whether in resolving conflicts inthe evidence, the jury clearly lost its way and created such amanifest miscarriage of justice that the conviction must bereversed and a new trial ordered. The discretionary power togrant a new trial should be exercised only in the exceptionalcase in which the evidence weighs heavily against theconviction.
 State v. Thompkins (1997), 78 Ohio St.3d 380, 387,678 N.E.2d 541 (internal citations and quotations omitted).
 {¶ 12} In the case sub judice, Ward argues that his conviction is against the weight of the evidence because "[t]he State's prosecution of Mr. Ward hinged on the credibility of both Mr. Mees and Ms. Roberts." Appellant Brief at 6. Moreover, Ward argues that his "conviction rests upon the testimony of two liars, both of whom received sweetheart plea agreements despite extremely incriminating evidence against them." Id. at 7.
 {¶ 13} Preliminarily, it must be noted that Ward's suggestion that both Mees' and Roberts' plea agreements affected their testimony at Ward's trial is ill-founded. At trial, Mees stated:
Q. When you were arrested — since then, have you talked to Mr.Ward?
 Mees: No.
 Q. Since you were arrested, have you ever talked to PatriciaRoberts?
 Mees: No.
 Q. Has anybody offered you anything to testify here today?Mees: No.
Trial Tr. at 91. Furthermore, Ms. Roberts testified:
Q. Did we make you any offers to — or agreements to have youtestify?
 Roberts: No, sir. I didn't even know I was testifying until Icame here yesterday.
 Q. Okay. So the only reason you're here is because you got asubpoena.
 Roberts: Yes, sir.
Trial Tr. at 117.
 {¶ 14} After reviewing the record, which includes the testimony, supra, and weighing all reasonable inferences, we conclude the jury did not lose its way or create a manifest miscarriage of justice. First, a confidential informant told the police that a black male was selling crack cocaine out of Mees' apartment. Second, both Mees and Roberts testified that Ward gave them crack cocaine on the day of their arrest. Third, Mees testified that Ward was the owner of the black sweatshirt that the police found in the apartment and that Ward was wearing it earlier in the day. Fourth, Roberts testified that while attempting to hide from the police in the upstairs bedroom, Ward gave her a rock of crack cocaine to hide. Finally, and perhaps most importantly, Ward admitted that he was a diabetic and the black sweatshirt found downstairs containing the 26.51 grams of crack cocaine also contained hypodermic needles and insulin. Both Mees and Roberts testified that they were not diabetic.
 {¶ 15} In light of the evidence presented at trial, we conclude that Ward's conviction is not against the manifest weight of the evidence. See Thompkins, supra. Thus, Ward's first assignment of error is overruled.
 Second Assignment of Error When a trial court includes a punishment in the writtensentencing judgment, but not in the sentence it imposes from thebench at the sentencing hearing, a court of appeals may remandthe case and direct the trial court to conform the entry to thesentence imposed from the bench.
 {¶ 16} In the instant case, the trial court did not order Ward to pay any costs associated with his prosecution at the sentencing hearing; however, in the trial court's sentencing entry, the court noted that Ward was ordered to pay "all costs of prosecution." Therefore, Ward contends that because the trial court failed to orally order Ward to pay the costs of prosecution, then we "should vacate court costs in order to make the judgment entry conform to the sentence imposed in open court." Appellant Brief at 8.
R.C. 2947.23 states:
In all criminal cases, including violations or ordinances, thejudge or magistrate shall include in the sentence the costs ofprosecution and render a judgment against the defendant for suchcosts. If a jury has been sworn at the trial of a case, the feesof the jurors shall be included in the costs, which shall be paidto the public treasury from which the jurors were paid.
Furthermore, Ward recognizes our recent decision in State v.Haynie (2004), 157 Ohio App.3d 708, 713, 2004-Ohio-2452, appeal allowed 103 Ohio St.3d 1477, 2004-Ohio-5405, which held, inter alia, that the language of R.C. 2947.23 required a trial court to include costs as part of its sentence. Given the mandatory language in the statute, we conclude that a trial court is not required to orally address a defendant at a sentencing hearing that the defendant is required by Ohio law to pay the costs of prosecution. Cf. R.C. 2929.19(B)(2) (requires that a trial court make findings and give reasons for imposing certain sentences, e.g. consecutive and maximum sentences); State v.Mendez, 3rd Dist. No. 12-02-09, 2003-Ohio-717 (holding that the trial court must directly address the defendant when imposing consecutive sentences). Thus, Ward's second assignment of error is overruled.
Judgment affirmed.
 Cupp and Rogers, J.J., concur.